IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:20-cv-00136 |
| 2.20 ACRES OF LAND, BY FRANK H. TERRY, JR., as Executor of the Estate of Hilah Parks Terry, *et al.*, | ) By: Elizabeth K. Dillon<br>) United States District Judge |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire permanent and temporary easements on numerous properties, including the property at issue in this case, designated MVP Parcel No. VA-RO-4118 (the Property). The Property is located in Roanoke County and, at the time the lawsuit was filed, it was owned by Hilah Parks Terry, Frank H. Terry, Jr., Elizabeth Lee Terry, a/k/a Elizabeth Lee Reynolds, Grace Minor Terry, and Unknown Heirs or Assigns of Frank H. Terry, Sr. (collectively Landowners). On June 28, 2022, MVP filed a suggestion of death notifying the court that Hilah Parks Terry had passed away, and the executor of his estate, Frank H. Terry, Jr., was substituted as a defendant. (Dkt. Nos. 38, 39.) On March 7, 2018, the court entered orders in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. Nos. 611), granting MVP immediate possession of the easements on the Property.

These easements were initially joined with easements on another parcel, 0.32 Acres of Land Owned by Grace Minor Terry, on property designated MVP Parcel No. VA-RO-5149. Landowners moved to sever trials for each separate tract. The court granted this motion on February 18, 2021.

A separate action was opened, and the court recently vested title to MVP's easement with MVP. *See generally* Case No. 7:21-cv-00099; *see id.* Dkt. No. 56.

Pending in this matter are MVP's motion to exclude expert testimony (Dkt. No. 10) and MVP's omnibus motion in limine (Dkt. No. 11). The court heard argument on these motions, so they are ripe. For the reasons that follow, MVP's motions will be granted.

I.  BACKGROUND

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order for MVP to construct, maintain, and operate a natural gas pipeline along a route that includes the Property (the Approved Route). On October 24, 2017, MVP filed an action to condemn easements along the Approved Route on the Property under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f. On October 27, 2017, MVP moved for partial summary judgment that it is authorized to condemn the easements and a preliminary injunction granting immediate possession for construction. On January 31, 2018, the court issued a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for immediate possession upon a determination of appropriate security. On March 7, 2018, the court set deposits and bonds for the Property and granted MVP immediate possession of the easements effective upon making the required deposit and posting the required bond.

Among the easements along the Approved Route, MVP is taking 2.20 acres on MVP Parcel No. VA-RO-4118, which includes 1.50 acres of temporary/permanent access easement and 0.70 acres of additional temporary workspace. (Case No. 7:17-cv-492, Dkt. No. 611.) The Property consists of approximately 53 acres on Poor Mountain Road in Roanoke County, Virginia. The temporary access easement is 40 feet in width and the permanent access easement is 25 feet in width. (*Id.*, Dkt. No. 1-146.) The easement is over an existing roadway and provides access to the

pipeline being constructed on an adjoining tract. (Rebuttal Report of Joseph E. Thompson (Thompson Rebuttal Report) 2, 7–8, Dkt. No. 10-1.)

No part of the pipeline is being constructed on the Terry property in this case. Nonetheless, the landowners' expert, Dennis Gruelle, finds that the property is damaged in the amount of $275,000. (Appraisal Report of Dennis Gruelle (Gruelle Report) 32, Dkt. No. 10-2.) Gruelle states that the "prime views, natural settings, and privacy are all impaired by the project and the property cannot justify premium rural residential use after the project given the loss of privacy, diminished quality of view vistas, the increase in noise, and the use of the road for two-way heavy vehicle and machinery traffic to maintain a natural gas pipeline built on steep slopes." (*Id.* at 25.) Gruelle finds that the "national audience," which relies on "great views," would "pass" on the property after the MVP project. (*Id.*)

In Gruelle's opinion, the property—all 53 acres and the historic home and other improvements—has lost 50% of its value because MVP is taking an access easement over an existing roadway. Gruelle asserts that the access easement prevents development, and he values the property based on sales of large-acreage tracts that are suitable only for single-family residential use because of lack of road frontage, steep topography, or high voltage transmission lines. (Gruelle Report 25–32.)

Gruelle does not use any comparable sales with an access road. The only paired-sales studies mentioned by Gruelle involve natural gas pipeline easements, not access roads. (*Id.* at 24 (citing Myers & Woods study, paired sales of a property at Wintergreen, Virginia, and sales of properties on Green Hollow Road to Reddy).

In his report, Gruelle does not recognize that the entire width of the access easement is not permanent. (Gruelle Report 20.) As a result, Gruelle expresses no opinion on rental value of the

3

temporary part of the easement. Instead, Gruelle values the whole easement as permanent. (*Id.* at 32.)

Linda DeVito, a broker, authored a letter opinion. (DeVito Letter, Dkt. No. 10-3.) DeVito writes that the pipeline project "serves to reduce marketability, desirability, and salability of [the] property." (*Id.*) She provides no supporting data.

Defendants also disclosed Larry Florin, who did not provide a report. (Defs.' Rule 26(a)(2) Disclosure 3–4, Dkt. No. 10-4.) According to defendants, Florin will testify as to the "reasonable probability of rural residential subdivision" and "the highest and best use of mountainside property and its market demand." (*Id.*) Defendants have not disclosed Florin's opinions on these subjects or the facts and data that support his opinions. Defendants also state that Florin will testify that "road easements for private rights-of-way are inconsistent and incompatible with high-end rural residential development for the loss of privacy and views." (*Id.* at 4.) No facts or data have been disclosed to support this opinion.

## II.  DISCUSSION

### A.  Legal Standards

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance. Legal standards regarding the same are set forth herein.

#### 1. Just compensation for partial permanent takings, including severance damages

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts

have employed the concept of "fair market value" to determine the condemnee's loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942); *see also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act). The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104.

5

*See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

### 2. Damages for perceived market negative influences

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Inc. of Va.*, Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the

7

particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in

8

condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

**B.  MVP's Motion to Exclude Expert Testimony**

MVP moves to exclude testimony by defendants' expert witnesses: Dennis Gruelle, Linda DeVito, and Larry Florin.

**1.  Dennis Gruelle**

MVP does not challenge Gruelle's qualifications to testify as an expert. Instead, it argues that his opinions are inadmissible because of several failures and problems with his methodology.

First, it contends that Gruelle's valuation opinion is inadmissible because it violates the "well-established rule that, where part of an owner's land is taken, just compensation does not include any diminution in value of the remainder caused by the use of adjoining land of others for the same project." (MVP's Mot. Exclude 4, Dkt. No. 10 (citing *Campbell v. United States*, 266 U.S. 368, 371 (1924)). The court agrees.

"The just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." *Campbell*, 266 U.S. at 371; *W. Va. Pulp & Paper*, 200 F.2d at 103 (noting rule in *Campbell* that there can be no award of compensation on account of use of lands taken from others); *E. Tenn. Nat. Gas Co. v. 2.93 Acres*, No. 4:02-cv-0179, 2007 WL 2688414, at *3–4 (W.D. Va. Sept. 13, 2007) (applying *Campbell* rule and excluding testimony by Gruelle that property was damaged by use of adjoining lands of others for natural gas pipeline); *United States v. Kooperman*, 263 F.2d 331, 332 (2d Cir. 1959) ("[T]he doctrine of severance damage does not include damage to one owner which may result or flow from the use to which the Government may put other lands in the same project."). The reason for the rule

9

in *Campbell* is that the party acquiring a property via condemnation should not be liable for damages caused by the use of a different property, just as an adjoining owner may devote his lands to the same use without liability to the defendant landowner. As the *Campbell* court explained, "If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put, as found by the court, they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users."[1]  266 U.S. at 371–72.

In addition to this error, the court concludes that Gruelle's opinion is unreliable for other reasons. For example, Gruelle does not consider the fact that the easement lies over an existing access road to a neighboring property.[2] Gruelle's assumption that the access road changes the highest and best use of the property—from "high-end" residential development with a "national market," to single-family residential use (Gruelle Report 13, 25)—is completely unsupported. Gruelle does not offer, for example, paired sales or studies that isolate the effect of an access road, and he does not provide data that an access road prevents residential development. Moreover, Gruelle's report fails to acknowledge that the entire width of the access easement is not permanent.

---

[1] The Ninth Circuit has adopted a narrow exception to the rule in *Campbell* where the land taken from the owner is "indispensable" to the overall project, the taking from the owner is substantial, and the damages resulting to the remainder of the owner's land are inseparable from those caused by the condemnor's use of the lands of others. *United States v. 15.65 Acres*, 689 F.2d 1329, 1332 (9th Cir. 1982). Courts in this and other circuits have not adopted this exception. *E. Tenn. Nat. Gas*, 2007 WL 2688414, at *2 (noting that no other circuit has adopted the Ninth Circuit exception); *Yellow Book* at 4.6.2.2 ("The Ninth Circuit's exception to the *Campbell* rule has not been adopted by other federal courts, and even in the Ninth Circuit is rarely invoked."). Even if the court were to recognize and apply that exception, however, the property is not "indispensable" to the project because the pipeline does not cross any part of the property. *See E. Tenn. Nat. Gas*, 2007 WL 2688414, at*3 (noting the fact that "the pipeline did not have to be laid across the Hylton property . . . is persuasive proof that the Hylton property was not 'indispensable' to the pipeline project. Therefore, even if I were to adopt the Ninth Circuit's exception to the *Campbell* rule, it would not apply in this case").

[2] Landowners argue that the pre-existing access road is not permanent. In 1958, the tract (VA-RO-4118) was conveyed to defendants' predecessor, Frank Huger Terry, but the grantor reserved "for the benefit of herself and her successors in title the right of ingress and egress through [VA-RO-4118] . . . to the adjoining lands held by her." (Dkt. No. 27-1.)

(Gruelle Report 20.)  He thus values the whole easement as permanent, rather than expressing any opinion on the rental value of the *temporary* part of the easement.  (Gruelle Report 32.)

Finally, for his after value, Gruelle uses sales of properties suitable only for single-family residential because of lack of road frontage, steep topography, or high voltage transmission lines.  (Gruelle Report 25–28, 30–31.)  These conditions are not analogous to an access road that already exists.  Gruelle also cites paired-sales studies, but the studies he cites are to properties encumbered by a natural gas pipeline, not an access road.

For these reasons, Gruelle's opinion is unreliable, is not the product of reliable principles and methods, Fed. R. Evid. 702(c), and will be excluded.

**2.  Larry Florin**

Landowners disclose that Mr. Florin has opinions on the "reasonable probability of rural residential subdivision" and the "highest and best use of mountainside property and its market demand.  (Defs.' Rule 26(a)(2) Disclosure 3–4.)  Florin also purports to testify that "road easements for private rights-of-way are inconsistent and incompatible with high-end rural residential development for the loss of privacy and views." (*Id.* at 4.)  This disclosure does not provide sufficient facts or data to support Florin's opinions.  Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Evid. 702 (requiring expert disclosures to be accompanied based on sufficient facts or data).

Defendants argue that Florin was not required to provide a report because he was not "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).  Instead, Florin identified himself to the Terrys as a local resident and real estate developer in 2002.  Florin is "specially employed" under this rule because he has no personal involvement in the facts giving rise to the case, regardless of whether he is compensated or volunteers.  *See Hudson Specialty Ins. Co. v. Talex Enters., LLC*, No. 5:17-cv-0137, 2019 WL

4197600, at *5 (S.D. Miss. Sept. 4, 2019); *Tolan v. Cotton*, No. 09-cv-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015). Therefore, he was required to provide a report under Rule 26(a)(2)(B).

Florin's opinions will be excluded. Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Evid. 702.

### 3. Linda DeVito

Similar to Florin, DeVito does not provide any facts or data to support her opinion that the access easement "serves to reduce marketability, desirability, and salability of the property." (DeVito Letter.) Therefore, her testimony will be excluded.

### C. MVP's Motion in Limine

#### 1. Evidence of Fear of Pipelines and Claims that Buyers Would not Purchase the Property Because of the Pipeline

Because defendants have not linked fear of pipelines to a diminution of value, evidence of fear is inadmissible. *See MVP v. 1.85 Acres (Lucki)*, Civil Action No. 7:19-cv-00147, 2020 WL 1067001, at *6 (W.D. Va. Mar. 5, 2020). As to claims that buyers would not purchase the property, such claims will be excluded because "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony." *Id.*

#### 2. Claims that the Pipeline is Dangerous or Unsafe and Evidence of Other Pipeline Accidents or Incidents

For similar reasons, the court has also excluded evidence based on claims that the pipeline in dangerous or unsafe and evidence of other pipeline accidents or incidents, and it will do so again in this case. *MVP v. 1.30 Acres (Baker)*, Civil Action No. 7:18-cv-00607, 2019 WL 4306981, at *5 (W.D. Va. Sept. 11, 2019) (excluding evidence about HCAs and the potential impact radius of an explosion area in the event of a pipeline rupture because there is no "evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a

diminution in value of the property"); *MVP v. 1.81 Acres (Jones)*, Civil Action No. 7:19-cv-00151, 2019 WL 3945272, at *5 (W.D. Va. Aug. 21, 2019) (excluding testimony because "an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace . . . and a diminution in value of the property").

### 3. Comments on FERC Docket

Gruelle cites comments filed on the FERC docket by opponents of the pipeline. (*See* Gruelle Report 26–27.) MVP moves to exclude this evidence as hearsay and unreliable evidence that an expert cannot reasonably rely upon under Rule 703. Landowners do not respond to this motion, which will be granted.

### 4. Evidence of Alleged Impacts from Construction

In his report, Gruelle states that the access easement will cause soil disruption and compaction and increased noise. As in *Lucki*, evidence of soil disruption and compaction is inadmissible because this possible impact is not inherent in the easement. *1.85 Acres (Lucki)*, 2020 WL 1067001, at *7 (excluding evidence of uncertain impact to springs, wells, drainage, and soil compaction because compensable loss in eminent domain proceedings is limited to risks that are inherent in the easement); *see also Atl. Coast Pipeline, LLC v. 0.07 Acre*, 396 F. Supp. 3d 628, 644–45 (W.D. Va. 2019). Evidence of temporary impacts, including evidence that noise levels will increase during construction of the Pipeline, is also not admissible. *1.30 Acres (Baker)*, 2019 WL 4306981, at *8 (instruction to disregard noise caused by construction).

Landowners cite a state law case addressing the measure of damages for "change in the grade of the street." *Town of Galax v. Waugh*, 129 S.E. 504, 509 (Va. 1925). This is not relevant to

impacts of construction or other temporary impacts.

Evidence of alleged impacts from construction will be excluded.

### 5. Evidence of Possible Utility Corridor

MVP moves to exclude this evidence because the possibility of a utility corridor is speculative and there is no evidence that it affects the market value of the property. *See MVP v. 8.37 Acres (Frank Terry I)*, Civil Action No. 7:20-cv-134, 2020 WL 4810128, at *8 (W.D. Va. Aug. 18, 2020). Landowners do not oppose this motion, which will be granted.

### 6. Examination of Joseph E. Thompson Concerning Vacated Order

Defendants do not oppose this portion of the motion, so it is granted by agreement.

### 7. Evidence of Settlement Offers and Communications

Defendants do not oppose this portion of the motion, so it is granted by agreement.

### 8. Evidence of Amounts Paid for Easements on Other Properties

Defendants do not oppose this portion of the motion, so it is granted by agreement.

## III.  CONCLUSION

For the reasons stated in the foregoing opinion, it is HEREBY ORDERED that MVP's motion in limine to exclude expert testimony (Dkt. No. 10) by Dennis Gruelle, Linda DeVito, and Larry Florin is GRANTED.

It is FURTHER ORDERED that MVP's motion in limine (Dkt. No. 11) is GRANTED.

The clerk is directed to provide a copy of this opinion and order to all counsel of record.

Entered: September 1, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge